P.H. Mortgage Corporation v. Sensenich, and we have Mr. mispronounced DeWood. That's correct, Your Honor. Thank you. DeWood for the appellant, and Mahisha Subbaraman for the appellee. It's Subbaraman, Your Honor. I'm sorry. All right. Not a problem, Your Honor. We'll proceed. Mr. DeWood, I see you reserved three minutes for rebuttal. Yes, thank you, Your Honor. Go ahead. May it please the court, my name is Matthew DeWood, and I represent the appellant creditor, P.H.H. Mortgage Corporation. The cases on appeal before this court concern a combined $300,000 in sanctions issued against a mortgage servicer that caused no harm, engaged in no bad faith, and was sanctioned for more than the entire mortgage balances in all three cases, primarily for the mailing of a single informational mortgage statement in two cases. This appeal is only before this court because the appellee seeks to make new law on the authority of bankruptcy courts to impose punitive non-contempt sanctions in any amount they feel is commensurate to the violation at hand. As we discussed at length in our briefing, this law the appellee seeks to create has been rejected by every circuit court in the country that has actually been presented with the constitutional Article III, Article I issues it presents. But more fundamentally, the appellee has selected the worst vehicle to attempt to create that new law for at least four distinct reasons. First, he failed to preserve his ability to argue the issue and challenge the law of the case established by the district court's mandate on appeal from the first sanctions order. Second, the sanctions imposed here were clearly contempt sanctions, so the appellee's questions themselves invite dicta. Third, $225,000 of the $300,000 in sanctions were imposed based on an alleged violation of the debtor's current orders, when as a matter of law, PHH did not violate those orders. And fourth, there was no finding of bad faith here, and accordingly, no basis for imposition of inherent authority sanctions. Judge Jacobs. Oh, go ahead, Judge Jacobs. Absolutely. Go ahead, Judge Jacobs. I was actually mentioning Judge Jacobs. Oh, I'm sorry. No problem, Your Honor. You said we're making new law, but you didn't address in their brief, they cited a 2019 case, Enrique Sanchez, where we held, I'm quoting, we therefore hold that bankruptcy courts, like Article III courts, possess inherent sanctioning powers, including, obviously, it said in the opinion, non-compensatory sanctions. So we're not making, to that extent at least, I know there are other aspects to the sanctions here that you're challenging, but in terms of the bankruptcy court's inherent power to do this, isn't that already established in this circuit? Well, Your Honor, the Sanchez decision did not establish that power fully for the purposes of this case. The inherent sanction power that was discussed was the civil contempt sanction power, and we're not dealing with civil contempt sanction power. No, my recollection of the Sanchez case was that there was a fine. I don't remember there being a contempt, a civil contempt sanction, and the language of that was not limited to contempt being the only sanction available. So I just think that's a misreading of the case. But let me just focus you on what my, I'm putting aside the sanctions for violations of the orders. I'm focused with respect to the $75,000 for Rule 3002.1. If, in fact, we can talk a little bit about whether or not there's authority under that rule because of other appropriate relief, but putting that aside for a minute, certainly under Sanchez, the bankruptcy court has the inherent power, if they believe that rule has been violated, to vindicate the authority of the courts of the bankruptcy code of that provision to sanction inherently. And then the question is, well, what's the amount, what's the limit of that, what the courts have determined non-serious sanction that would otherwise warrant a jury trial if it was serious? And for guidance, I think in this circuit, we would look to 20th Century Fox where we said for a corporation that that could go, the bright line that was established in there up to $100,000. And it made clear that, you know, you consider the impact on a particular organization and size. So my question to you would be, if you combine Sanchez and 20th Century Fox on the inherent power of the bankruptcy court, why wouldn't $75,000? Obviously, I don't think you can argue, given the size of your client, that that $75,000 is so devastating would require a jury trial for contempt or something similar to that. So why doesn't that control at least the $75,000 part of the case? So with respect to the $75,000 part of the case, that has a stronger argument there, certainly, because the amount of the sanction isn't as much as it is in the inherent power sanctions that were issued. So certainly there is an argument to be made on that. However, that obviously puts aside, as your honor noted, the various other arguments we have related to that. And at the end of the day, that we're talking about $1,000 per mortgage statement over the course of 25 mortgage statements. When PHH first found out about this issue, when the motion was filed. And so what we have is we have essentially a violation based upon 25 times that were really only told about once. So what you have is an escalation off of that, so there's a problem with that. But yes, in the Sanchez case, the court left for another day the issue of substantial punitive sanctions. But also in the Sanchez case, the Article I, Article III issue wasn't particularly addressed, and that issue is the constitutional issue. And that goes to the inherent power of a bankruptcy court to issue sanctions. Sanchez said specifically the power is not contingent on Article III. It's inherent in the nature of federal courts charged with judicial functions. They specifically addressed the Article III argument. So it's completely on point as it relates to whether or not this exists under Article III. And Judge Jacobs, I think you were referencing Judge Jacobs, has been the whole issue of Rule 37, the magistrate judge's power, obviously has come up. And in the whole R.B. Sarali case, we concluded the same thing for magistrate judges under Rule 37. Rule 11, there was more of a discussion about, but Rule 37, I think it's well accepted that magistrate judges have the same power, right? So the power is constrained by the Constitution. And the problem that we have, and there are a lot of decisions like this where I see, and Your Honor has himself issued quite a few decisions referencing the inherent power of federal courts. And the trouble that happens with these cases is there's sort of a shorthand reference to federal courts having this power. But just as Roberts explained in the Stern v. Marshall decision, and also in his dissent in the Wellness decision, that has to be more precisely looked at. Because the Article I, Article III analysis, if you don't have lifetime tenure and irreducible salary, then you're not an Article III judge. And if you're not an Article III judge, you cannot wield the judicial power of the United States. And that is the inherent power to sanction. Absolutely. I wonder if we're not going down a rabbit hole. I don't understand the judge to have ruled on the basis of inherent power. I understand the judge to have ruled on the basis of power granted in Rule 3002.1. That was the initial basis in the first sanctions order, Your Honor. But I believe in the second order, it was by both. The judge relied upon the rule itself and then also upon the inherent power. And as I mentioned, I will grant you that with respect to the $75,000 issued in the Rule 3002.1, the constitutional issues are far less concerned because the amount is a lot less. Could I ask you to turn to the $225,000 sanction and whether there is a clear violation under Taggart? Yes, Your Honor. This is the debtor's current order issue. It's our primary argument against the $225,000 component of the sanctions. And the reason why is because this court has been very clear that there must be a clear and unambiguous order in order to sanction a party for violating it. And the Taggart case, which dealt with civil contempt sanctions, which we don't have here, but we do have instructive language that I believe helps in this situation. Because what the Taggart decision said was that you can only hold somebody in civil contempt for violating a discharge order if, quote, if there is no fair ground of doubt as to whether the order barred the creditor's conduct. And they also further explained that the test is that there's no objectively reasonable basis for concluding that the creditor's conduct might be lawful. And what we have here, as we explained in detail in our brief, is we have a debtor's current order that precludes PHH from disputing that the debtors are current, as set forth herein, in any other proceeding. And as we explained, the Blackfriars Dictionary, the word proceeding is the business done in courts. Nailing of a mortgage statement is not the business done in courts. And there hasn't really been an argument to say that it is. Am I correct that these servicing amounts were sent to the mortgagors, but they were not recorded as funds owed. And there was never a way to collect them. So is that true? And if so, what was the purpose of it? That is correct, Your Honor. I spoke with the clients after to figure out why they were in there in the first place. And there was a servicing requirement to keep recording them and to keep track of them. So they were included in the informational section. And if you actually look in the records, Your Honors, you can see that the actual statements that are there, you see that they're listed only in the informational sections, for informational purposes only, in JA 645. And the response we get from the other side is, we see cases like this all the time. This is not an attempt to collect a debt, but you're really trying to collect a debt. So you can't just absolve yourself by saying this isn't something we're trying to collect. But in this case, that's not what we have. In this case, we have note in the informational section that these things happened, a property inspection occurred, what have you. And then there's a request for payment for only the escrow amount, only the interest and the principal balance. And we know that that's how they were received, because for 25 statements, at least the trustee didn't pay those fees. And yet there was no indication in any subsequent statements that they were past due or owed. So the trustee himself received those statements and believed them to be not owed, believed those fees not to be charged to the debtors and didn't pay them. And then there was one statement that was issued after each debtor's current order. And the trustee immediately filed a motion for contempt and sanctions. But that's the secondary problem to this. The first problem is... How would somebody looking at the bill know that the NSFC and the property inspection fees are not included in the amount due? Because the bill itself specifically says the amount that's due. And the amount that it says does not include those amounts. It's the sum of the principal and interest and of the escrow. Correct. And you can see on page... A good example is the value statement on JA673. You can see that the principal and interest are listed and then the total payment due. If you add those up there, they equal the same amount. Yes, even I can do that. Correct, Your Honor. And then if you look at 674 further, it's the next page of that statement. You see total amount outstanding post-petition late charges is zero. Amount post-petition payments past due. I'm sorry, Your Honor. I didn't catch that. I wondered why it was there. And I was assuming it could be because such things... The computer simply always spit it out and you'd have to rejigger the whole thing in order to avoid it. But it is not an amount due. And it's clear that the amount due does not include that. That's correct, Your Honor. And so that's our secondary argument, essentially, is that even if you could consider the mailing of a mortgage statement to be disputing that the debtors were current in their proceeding, this didn't even dispute that they were current. It showed that they were current on the statement. And certainly, you know, so there's no violation of the debtor's current order, but certainly in a minimum, it's ambiguous. And this court's precedence and the Taggart decision make it very clear that you have to have a clear and unambiguous order in order to sanction someone for violence. Judge Jenkins, again, when did Taggart come out? It's the same year as this order. Before or after? After. After. 2019 was the Taggart decision. However, Your Honor, the Calico decision is in 2010, and that was before this order. So if the concern Your Honor has is whether or not the bankruptcy court would know that that was the standard by which we judge this, the bankruptcy court would know that. And not only that, but on remand when we came back down, we briefed this extensively and pointed out to the bankruptcy court, notwithstanding the incredibly awkward position of being on remand and telling the bankruptcy court that her order was wrong. We pointed that out in detail and said, look, we just, PHH did not violate the debtor's current order because it didn't dispute that the debtors were current in any proceeding. Just to clarify one thing, these are, this does not raise a circuit split. The debtor's current order issue? Yes. No, I mean this whole case. Because the briefing seems to be focused on contempt or non-contempt sanctions and the circuit split surrounding that. Correct, Your Honor. There's a problem with the contempt, non-contempt issue because their position is that these are non-contempt sanctions. Our position is that they were contempt sanctions because they were issued as a result of an alleged violation of an order. So that sort of mucks with the works a bit. But our concern is that if this court doesn't do the constitutional avoidance practice that it traditionally practices, that if there's a ruling on the constitutional issue, that would be used for the basis to say that there is a circuit split and the basis for a petition for certiorari. And we are interested to see this case end, as you can imagine. So to the extent that we have non-constitutional basis to decide it, as Your Honor, Judge Jacobs has said in the Betchell case in 2006, even when you have a complex and difficult non-constitutional basis, you have to consider it first if it has the potential to fairly dispose of the case. And that's our argument. Thank you, Mr. Dooley. I think your time is up, but you reserve three minutes for rebuttal. So we'll now hear from Mr. Subbaraman. Thank you, Your Honor. Good morning, Judge Jacobs, Judge Bianco, and Judge Park. May it please the court, my name is Mahesha Subbaraman, and it is my privilege to represent Chapter 13 Standing Trustee Jan M. Sensnick, the appellee in these consolidated bankruptcy cases on direct review. The bankruptcy court here properly imposed commensurate, punitive, non-contempt sanctions against PHH for 75 violations of Bankruptcy Rule 3002.1c across three Chapter 13 cases, and further violation of bankruptcy orders implementing Bankruptcy Rule 3002.1h in two of these cases. The only way the bankruptcy system works is if debtors and creditors play by the rules. The bankruptcy system is responsible for tens of thousands of cases, billions of dollars, and filings too numerous to count. The bankruptcy court's time and resources, in turn, are limited. Bankruptcy judges thus rely on debtors and creditors to follow the rules in the first instance, and indeed, that is what many mortgage creditors do. But that is not PHH. PHH repeatedly breaks the rules, even after they've been caught, even after they've been told they can't do it anymore, and even after they've promised they won't do it again. The question then is, can the bankruptcy court, faced with egregious, repeated, non-criminal violations of bankruptcy rules and orders, impose a fitting penalty? Or is it the case that the greater the misconduct, the less the bankruptcy court can do to ensure this doesn't happen again? I think those questions answer themselves. Bankruptcy judges have to be able to act promptly and independently to protect the integrity of the bankruptcy system. And that is what Judge Brown did here in two thoughtful, comprehensive opinions, one in 2016 and the second on remand in 2019. So, the trustee respectfully asked the court to join the First and the Eighth Circuits in holding that bankruptcy courts may impose punitive, non-contempt sanctions in any amount commensurate to the violation at hand. And on that basis, the bankruptcy court's sanctions in this case should be affirmed. Judge Bianco, I want to focus on Judge Jacobs' question to Mr. DeLude, because I have the same question. I've looked at these orders that – I'm talking about the violation of the orders now, the $225,000. The question becomes, before we address any constitutional questions as it relates to that money, whether or not a violation of that order is clear and unambiguous based upon the language of the order. And much of the order – it's a short order. The first two are determinations. They don't order anything. They're determinations. The third subsection there says something about payment, about the first mortgage. And what the argument here and what the bankruptcy judge found was that the statement that the mortgagee shall be precluded from disputing that the debtors are current as set forth in any other proceeding. And as you saw in their papers and we heard again today, if you look at the plain language, I guess, of that particular section and you're arguing the plain language to us on Rule 3002.1, how can a mailing regarding a mortgage statement qualify as doing something in any proceeding, no less than any other proceeding? So, Your Honor, let's break that down a little bit. First, let's start with the current order and the language. And this is quoted on page 5 of the Special Appendix. The key language is the order's declaration that the debtors, by their payments through the office of the Chapter 13 trustee, have made all payments due, including all monthly payments and any other charges or amount due under their mortgage with PHH Morgan Corporation. Mr. Subramanian, I want to stop you on that because a declaration is not ordering someone not to do something. A declaration is a declaration. It's a determination. Let me give you an example. If it's a district court judge, I dismiss a complaint. Someone brings a suit. I say, your claims have no merit. I make a determination. The case is dismissed. That plaintiff sends a letter to the defendant saying, you know, I still think you owe me the money, no matter what the judge said. That wouldn't be a violation of an order. It's inconsistent with my dismissal, but I certainly wouldn't give grounds for like a contempt or something like that for violating any type of order, right? Well, your honor, I think the other background principle that has to be factored into it is that this declaration is coming under bankruptcy rule 3002.1H, which specifically requires the bankruptcy court to make a determination as to whether all payments due have been made. The reason why that rule exists is to provide assurance to the debtors that they are current on their mortgages. So this is a functional declaration. It's meant to do something. It's not merely an advisory opinion on the part of the district, on the part of the bankruptcy court. The bankruptcy court isn't just opining for the sake of opining. Oh, you're good on your mortgage. You have nothing to worry about. It is saying this for a specific reason and that the reason it's making this determination is because it's part of a comprehensive scheme under rule 3002.1, which was specifically enacted. You can sanction someone for violation of the rule then. I agree with you. It is pursuant to that rule. And as we discussed, either under the rule under your inherent authority, there is certainly case law in this court that would say you would have the ability to sanction under the rule. But that's not only what the magistrate, the bankruptcy judge did here. She sanctioned for violation of an order. So we can't. We can't. The standard for that is different. Well, your honor, I don't think that's entirely correct. Take, for example, the Taggart case, which opposing counsel raised during his argument. I think he misquoted Taggart. Taggart doesn't talk about orders. What it says is we have said civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct. Not the scope of the injunction, but the wrongfulness of the defendant's conduct. Here, the wrongfulness of the defendant's conduct is sending statements to debtors which say you owe money when the bankruptcy court pursuant to a rule that requires the bankruptcy court to make a determination on this front so that the parties' relationships are clear and the bankruptcy system can function and the debtors' fresh start can be protected. This is Judge Jacobs. I mean, you said that the bankruptcy court made clear that the mortgage holder cannot, is advised that all payments due have been paid. But this bill speaks of the total payment due, and the total payment due doesn't include the property inspection fee or the NSF fees. Under Taggart or anything else, it's kind of hard to see how this bill violates a ruling that says even if you ordered the mortgage holder to say you cannot claim any amount due beyond this amount, they haven't done that. Respectfully, Your Honor, we disagree. If you look at the mortgage statements, they contain the statement about saying, well, we're only sending these statements because the relevant local bankruptcy rules prescribe the sending of statements to debtors about what the current status of their mortgage is. Well, if you look at what the local bankruptcy rules in force at that time had to say, and these are quoted in the record at JA-426, and I'm specifically speaking of local bankruptcy rule 3007-1-1H, they limit mortgage statements. They require mortgage statements to be accurate in nature. They have to have accurate information about what amounts are being assessed, and they limit the statements to only amounts due. The only reason that PHH could put these amounts on the statement if they weren't immediately assessing it for that statement is if the amount was going to be due at some point. The only reason for an amount regarding an NSF fee or a property inspection fee to exist is if at some point PHH intended to have the debtor pay it. If they didn't intend to have the debtor pay it, if this was just something advisory or abstract, it shouldn't have been on the statement in the first place. The statement says this is not an attempt to collect a debt. Now, you have an argument that a person who receives this could have some concern that they're accruing an obligation. But what you have to show is that it is an unambiguous violation of an order, and based on the fact that this doesn't say it's due and doesn't bill for it, it's really— Well, you're— For hundreds and hundreds of thousands of dollars. Judge, if I can answer that question two ways. First, again, these statements are being sent against the backdrop of the Vermont local bankruptcy rules establishing what a statement to a debtor regarding their mortgage has to say. And one of the limits that it says is if you're going to list an amount on these statements, then the only amounts you can list are amounts due. And the reason it has that rule is so that when a debtor gets a statement from a mortgage servicer, they can look at it and say, to the extent there are dollar amounts here, I know that there are things that I'm being asked to pay. And there is no confusion on that front. So that's one aspect of this that I think we have to look at. The other aspect of this that we have— No, your view is that this is confusing. Well, at a minimum, they're creating confusion. But they're violating the claim mandate of the bankruptcy rules in terms of listing amounts that are not only— Either they're asserting amounts that are due and that they intend to be paid, or they're listing amounts that are not due, contrary to what the bankruptcy rules require. Now— But in any event— Now, as I understand it, the district court vacated the prior sanctions order and said that any sanctions have to be non-serious. So it looks like the bankruptcy judge said, okay, well, a non-serious has to be under $100,000 for cooperation. So I'm going to impose the maximum of $100,000 in 1988 dollars or whatever it is. And so, basically, the bankruptcy judge's view is that this violation, which we've just been talking about, is at the top of the list of egregious things that— Well— I don't see that. Well, Your Honor, let me provide additional explanation on this point. And that dovetails into the second point I was going to make to the court, which is that this is about an ongoing course of conduct. And I think one of the things we may have lost sight of here is the fact that this case did not begin in 2016. This case effectively began in 2014, when PHH started sending misleading or incorrect statements to debtors demanding amounts that they did not owe. Now, in that instance, they were doing it because they were misapplying the debtors' mortgage payments. But, nevertheless, they were sending misleading, incorrect statements to debtors saying, you owe money that you don't owe. And what the bankruptcy court did in that context was, when PHH was called to the mat on it, the bankruptcy court essentially said, look, I'll accept a consent sanction from you for $9,000. And I'll accept it because you have promised to this court that you are going to fix these problems going forward. And you've, in fact, told me that you will not have the defense in the future of being a first-time violator if this happens again. So then, all of a sudden, they start sending incorrect statements to debtors. So it's not the case that these Rule 3002.1 violations fell out of the sky in 2016 and the bankruptcy court decided to sanction PHH out of the clear blue with a $100,000 sanction for one misleading statement. Rather, it was looking at an ongoing course of conduct that PHH continued to perpetrate even after it had told the bankruptcy court, we're taking corrective measures. Even after it had told the bankruptcy court, you need to take us at our word that we're doing this. And even after it had told the bankruptcy court, sanctions should be progressive in nature and we will not have the defense the second time around of being a first-time violator. So that's where the seriousness and the consummation of PHH's conduct comes into play. And that, I think, dovetails into the Taggart v. Lorenzen analysis of, is there a fair ground of doubt about the wrongfulness of the defendant's conduct? PHH has been on notice since 2014 that it needs to send correct statements to debtors. And the reason it needs to do that is because the debtors… Correct statements has to correctly reflect all payments due. And if I'm reading this, it's not seeking, it's not treating as an amount due the property inspection fee or the NSF fee. Well, Your Honor, respectfully, it is treating that by listing the amount. If the rules say, and this is what, again, look at JA 426, the Vermont local bankruptcy rules regulate the content of these statements. And they say the only things that you can list on these statements are amounts due. And to the extent you have property inspection fees or NSF fees that have not been properly noticed, then they cannot be listed on the statement. Because a debtor looking at the statement is going to say, the rules on the one hand say only amounts due can be on a statement. I'm looking at my statement. It says $56 for a property inspection fee. That must be an amount due. And PHH can't kind of sweep that under the rug by saying, well, we didn't bring a collection action. Therefore, we can kind of escape the implication that we are providing in every one of these statements that this is an amount for which the debtor will be held accountable. Maybe we're not initiating the collection in this particular statement. But sometime down the road, $56 is an amount we're going to demand that the debtor pay. If the court kind of wants a ready analogy in this circumstance, I encourage you to look at a case that we cite in our brief called Henry Childs by the U.S. Supreme Court. In that case, you had the Supreme Court in one of its rare exercises of original jurisdiction. And it's an old case from 1877. But you had the Supreme Court say that certain bonds were belonging to a particular party and a contract was void. And what that party, who was affected by the order, then proceeded to do was send communications to other people saying, we disagree. We're going to continue to assert ownership of these bonds. And what did the Supreme Court do in the face of that contravention of its declaration? It sanctioned the party. It said, you can't go around telling parties that you own something that we've voided. And that situation ultimately is no different than the situation that we have here. The declaration that is – I'm sorry. Mr. Subra, I think I tried to give you an equal amount of additional time I gave to Mr. DeLude. But I think we've reached that point. I appreciate that, Your Honor. Thank you for your patience. All right. Mr. DeLude, you have three minutes in rebuttal. Mr. DeLude, are you there? I'm sorry, Your Honor. I was still on mute. It was very elegant. Hold on a moment. I'll try and be as brief as I can. I want to start first with the Taggart decision. On page 1799 of the Taggart decision, it says very clearly, rather, in our view, a court may hold a creditor in civil contempt for violating a discharge order if there is, and they even italicize it, no fair ground of doubt as to whether the order barred the creditor's conduct. And then it goes on with the rest of the language that I accurately quoted. So I just want to make that clear. On the point of this, you know, the backdrop of where PHH was from the original gravel sanctions order, this has come up a lot in their briefing. There is a very distinct difference between what happened in 2014 and what happened in this case. And the difference was that PHH was actually misapplying mortgage payments and actually saying that amounts were due. What happened here was completely different and distinct, a totally separate issue. And the way I like to think of it is an analogy. If you have a person driving their car and they go to stop at a stop sign, but they do one of those rolling stops that I'm sure we've all done, and then they get a $100 ticket from the police officer. Now, the next day or months later, actually in this case, four years later, they park next to their office building on a two-hour maximum zone. They accidentally stay two hours and 15 minutes. Is it then appropriate that the next fine is $3,333? Because that's the escalation we're seeing. Now, they're both involving a car, so they do have some tangential relationship to the same conduct, but it's just not the same conduct. And what they're trying to do is hold PHH to a standard of perfection in each and everything that it does in bankruptcy court. And if you do that, if you force a mortgage servicer to get escalating sanctions each time, then you're just going to make the mortgage lending industry unprofitable. And the last point, if I can, is to address Your Honor's question on Sanchez, because I wanted to make sure I had that clear. Merging Sanchez and 20th Century Fox I don't believe would be the correct analysis for this court to undertake. The Sanchez decision makes it very clear that the authority that this court recognized was the authority to, quote, impose relatively minor noncompensatory sanctions on attorneys appearing before the court in appropriate circumstances. Now, that has a lot of caveats to it. The idea of more substantial punitive sanctions was held for another day. But you see, attorneys appearing before the court, as we've seen in this court's precedents, attorneys appearing before the court are held to an entirely different standard of sanctionability. They don't need the procedural protections that a lot of people do because they're considered to be... You're suggesting that bankruptcy court does not have the inherent power if a party is violating the bankruptcy rules that, and I know you disagree with this, assume flagrantly violating the bankruptcy rules. You're suggesting that there's no inherent authority to sanction the company? You only have the authority to sanction the lawyer? No, Your Honor. I'm sorry. I don't mean to be unclear on that point. What I'm saying is that the narrow holding on that relates to the ability to impose minor noncompensatory sanctions on attorneys. So there's two layers to that. Now, if we read that as any minor noncompensatory sanctions, then I agree that Sanchez does allow that. But let's look at the actual sanctions here. The $3,002.1 sanction in Bellew was $25,000 for the mailing of the mortgage statement. Now, that's just the $3,002.1 sanctions. If you look at the Bellew mortgage as of May 2016, the relevant date for this case, $11,081.11. That was the full mortgage in Bellew. All right. You can also consider the prior violation where it was a $9,000 sanction. But I have one more question for you. The $75,000 with respect to it going to the trustee, the bankruptcy judge, in justifying that, said it's in part without doing like a timesheet analysis or anything like that to compensate for the time in enforcing the rule in this case. And also just to allow, I guess, future oversight for compliance with the rule. But the issue that was raised with respect to whether that might run afoul of Section 326 of Title 11. Can you address that? If it's in some form compensation, why it does not run afoul of that section? It does run afoul of that section, Your Honor. Because Section 326B specifically says that the court may not allow compensation for services or reimbursement of expenses of a standing trustee appointed under Section 580. I know, but I found other bankruptcy cases where bankruptcy judges have reimbursed their costs and attorney's fees to a trustee. You're saying all those cases are wrong. You can't, you know, you can't as a sanction reimburse a trustee. Is that what you're suggesting without violating that section? No, Your Honor. In this case, it can't be done. And the reason why it can't be done in this case is because the trustee didn't file a proper application for request for attorney's fees under the rule. Under the rule, as we explained in our briefing, we've never disputed under the rule of the 3002.1 violation. There is the ability to get attorney's fees because you don't want to chill the ability to enforce rule 3002.1. In this case, it would essentially be the cost of preparing the motion for contempt and sanctions because PHH immediately removed the fees afterwards. So that time period, the trustee could have submitted an application for fees. I don't know, a thousand dollars or something, whatever the amount of the cost would be to prepare those motions. That would have been a compensable cost under rule 3002.1 because it would have been pursuant to that particular authority. But under the way that the bankruptcy court did, it was essentially just, I think that these awards that are inherent authority words or 3002.1 awards that I'm issuing, rather than giving them to legal law services of Vermont, I'm going to give them to the trustee for their efforts in opposing PHH's appeal. And that's really what they related to. And we've won that appeal. So there's multiple layers of problems with that. But the big problem is. It was broader than that. She said for the time and effort devoted to detecting, describing and acting on PHH's failure to comply with the rule. So it wasn't hinged on a particular brief or something like that. It was more general with respect to detecting and enforcing the rule. But I understand your argument on that. So I think your time is up.  All right. Thank you. I thank both of you for your argument today. And that completes the calendar. We have no emotion. There are no motions today. So I'll ask.